No. 98-515

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 44N

IN THE MATTER OF

T.A. & T.R.A.,

Youths In Need Of Care

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

For Appellant Father:

Patrick E. Kenney, Billings, Montana

For Natural Mother:

Kevin Gillen, Billings, Montana

Guardian ad Litem:

Damon L. Gannett, Billings, Montana

For Respondent:

Joseph P. Mazurek, Montana Attorney General, C. Mark Fowler, Assistant Montana

Attorney General; Dennis Paxinos, Yellowstone County Attorney, Melanie Logan, Deputy Yellowstone County Attorney, Billings, Montana

_____

Submitted on Briefs: October 14, 1999

Decided: February 15, 2000

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1.Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2.Mother (J.B.) and father (D.A.) appeal from the Findings of Fact and Conclusions of Law of the Thirteenth Judicial District Court, Yellowstone County, terminating the parental rights of J.B. and D.A. to their children, (T.A.) and (T.R.A.). We affirm

¶3.J.B. presents three issues and D.A. presents two issues on appeal. We restate the issues as follows:

¶4. Whether the District Court abused its discretion in terminating J.B.'s parental rights to T.A. and T.R.A.

¶5. Whether the District Court abused its discretion in terminating D.A.'s parental rights to T.A. and T.R.A.

FACTUAL AND PROCEDURAL BACKGROUND

¶6.T.A. and T.R.A, two children of J.B. and D.A., are the subjects of this action. T.A. was

born on July 14, 1995, T.R.A. was born May 30, 1997. The Department of Public Health and Human Services of the State of Montana (the Department) first became involved with the family in May of 1994 when the Department received a report that J.B. was pregnant and tested positive for marijuana at a prenatal visit. In June, 1995, the Department received another referral that J.B. was again pregnant and again tested positive for marijuana. The baby, T.A. tested positive for marijuana at birth.

¶7.In November, 1996, a probation and parole search was conducted at the family's residence. Due to the unsanitary condition of the residence, the probation and parole officer contacted the Department. The Department filed a Petition for Temporary Investigative Authority and Protective Services for T.A. (and siblings P.A. and E.A. which were ultimately transferred to the jurisdiction of the Crow Tribal Court and are not subjects of this appeal). The order remained in effect until May, 1997, when the Department filed a Petition for Temporary Custody and moved to add T.R.A. to that petition, which was granted in June of 1997. In November, 1997, the Department filed a Petition for Permanent Custody, Termination of Parental Rights to Consent to Adoption. The Court issued Findings of Fact and Conclusions of Law terminating the parental rights of J.B. and D.A. to their children, T.A. and T.R.A. on July 7, 1998. Judgment was entered on July 8, 1998. The children currently reside with their maternal grandmother who wishes to adopt them.

¶8.During the trial before the District Court, a total of 12 witnesses testified for the respective parties. Based upon that evidence, the District Court found that J.B. and D.A. were frequent drug users. J.B. admitted to smoking marijuana and breast feeding T.A. despite having been cautioned against doing so. She stated that she had no concerns about using marijuana in the presence of her children and tested positive for marijuana frequently, including during and after her pregnancy with T.R.A.. D.A. tested positive for marijuana and cocaine on six occasions and refused to provide a sample upon request on six other occasions.

¶9.Dr. Ned Tranel, a clinical psychologist evaluated J.B. in July, 1994, to obtain information about her parenting capabilities. He formed the opinion that J.B. would have little prospect of meeting the minimal standards of parenting a young child due in part to her chronic substance abuse, borderline personality disorder and an IQ score at the 12th percentile of the population.

¶10.Virginia Gross, a certified chemical dependancy counselor saw J.B. in 1997 and

concluded that J.B. was still chemically dependant and in need of intensive outpatient care. J.B. continued to use marijuana daily even during her treatment. In fact, her use increased through-out the treatment period.

¶11.Treeva Lyng, a chemical dependancy counselor, met with D.A. who had previously been through chemical treatment unsuccessfully. D.A. relapsed during his treatment with Lyng on several occasions. He began treatment again in 1997 but did not complete the program and remained chemically dependant.

¶12.Steven Hurd, a parole officer testified to D.A.'s significant criminal history including misdemeanor theft, carrying a concealed weapon, criminal possession of dangerous drugs, conspiracy to commit burglary, DUI, criminal sale of dangerous drugs, robbery, and domestic abuse. D.A. was noncompliant with reporting, employment and substance abuse while on parole from Montana State Prison for robbery.

¶13.Pam Weishedel, a social worker with the Department, was assigned to provide supervision to J.B. and D.A.. She offered D.A. three court-approved treatment plans throughout the length of this case. Those plans required that D.A. obtain chemical dependancy evaluation and complete treatment, attend AA three times per week, obtain and maintain employment, maintain an appropriate home, complete parenting classes, and pay child support, among other requirements. While there is some evidence to suggest that D.A. wanted to and tried to stop using drugs, ultimately he could not successfully complete any of the treatment plans. Weishedel believed that D.A. would not likely change in a reasonable time and was unable, unfit, or unwilling to provide his children with adequate parental care. Weishedel gave J.B. similar treatment plans which she did not successfully complete.

¶14.The record is replete with additional information indicating that J.B. and D.A. are addicted to illegal drugs and are unwilling or unable to change their lifestyles in order to appropriately care for their children. The parents have shown no long term improvement in their parenting skills or drug dependancy and have consistently chosen the use of drugs over their children. The record does not support either parent's contention that they have successfully completed their treatment plans, or rehabilitated themselves as parents.

¶15.There is sufficient evidence in the record to support the District Court's decision to place the permanent custody of T.A. and T.R.A. with the Department and to terminate the parental rights of J.B. and D.A. We conclude that the District Court did not abuse its

discretion.

¶16.Affirmed.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER